Smith v. Office of the Attorney General, State of Alabama Your Honors, may it please the Court. My name is Heather Leonard and I have the honor and pleasure of representing Susan Smith and her claims against her current employer, the Office of the Attorney General. The Code of Alabama has set forth a merit system, its intent and its purpose with respect to pay and employment decisions is to ensure the fair and equal treatment of all of its employees. And through that, it creates jobs, establishes pay grades, and that is intended so that people are not treated differently because of who they know, the color of their skin, or their gender. In this case, the very individual who would be tasked with prosecuting violations of Alabama law, the Attorney General in its office, manipulated that system to ensure that male employees receive not only the protection of that system, but higher pay outside of it to the detriment of its female employees. It's important to note, in Ms. Smith's case, we have two claims, but they work hand-in-hand to show how the Attorney General treated male employees more favorably. There is a pay discrimination claim that exists both under the Equal Pay Act and Title VII, and then there is a failure to promote claim. With respect to the pay discrimination claim, this really boils down to a fight that this court I think hears in almost every employment case, which is, what serves as a proper comparator? The first step before we proceed down that road is to recognize who the decision makers are with respect to pay. For the Office of the Attorney General, only the appointing authority, the Attorney General, has the authority to make that decision. Admittedly, he or she can receive recommendations, but the ultimate decision lies with that individual, and they may or may not accept those recommendations. In this circumstance, Agent Smith was hired under a prior Attorney General. She was hired under Attorney General Troy Smith. He, I apologize, it's one of those days, y'all. He set her rate of pay. Shortly thereafter, we see that there is a freeze in pay. When a new Attorney General, Luther Strange, takes over, he creates a new unit and decides that he is going to hire in some additional people. After Agent Smith realizes that these agents are being paid more than her, she goes and makes a request to be treated in a similar manner to them. She makes a request to Deputy Division Chief Jesse Soroyer, Division Chief Tim Furman, Deputy Attorney General Kevin Turner, and even attempts to go to Attorney General Strange, but is referred back to Turner. In all of these situations, she's told there's a pay freeze and that there's no money available. What it's telling is she says, please, take me out of the merit system and put me in one of the unclassified positions so I can get a higher rate of pay. She's told in 2013 that there's no money available to do so. Nonetheless, during this period of time, we see two male agents who have substantially the same duties as her being treated differently. The first is Special Agent Keith Baker, who retired from the Federal Bureau of Investigations in 2013. He was hired in briefly as a Special Investigator, which is an unclassified position, because he was not yet eligible to apply for or enter into a merit system position where he would have job protection. At that time, his rate of pay was set at the highest level for a Special Agent. He was set at a Step 24, which was $76,348.80. At that time, Special Agent Smith, doing the exact same duties as him, is paid at a Step Why was Agent Baker's pay set at a higher rate? If you look to the pay recommendations submitted by Attorney General Smith to the, I'm now elevating my client, by Attorney General Strange to the state, Agent Baker's prior pay with the FBI is used as the justification. They say in order to justify this rate of pay, I'm pointing to the rate of pay he had there. When we asked Attorney General Strange in his deposition why Baker's pay was set at a higher rate than Ms. Smith, he was asked, are you familiar with why Ms. Smith would be a Step 5 of the Special Agent merit classification, and you would have Mr. Baker at a Step 24? His answer was, no, I've not seen this before. And the question, so you have no knowledge? No. That's an important distinction because as is the case in all employment cases, at some point an employer is going to say, this is why I made the decision, and then the employee has to have an opportunity to rebut or attack that. Here we have the decision maker for this pay disparity saying, I can't give you a reason. The only thing that we know is that both of these individuals coming into their office had 20 years of law enforcement service, be it at the state or at the local level, I mean federal or the local level. They come in to perform substantially the same duties, but one is paid over $30,000 or approximately $30,000 more than the other. So as Agent Baker rocks along in his job, he realizes that he would like the protection of, or he would like more money. So he's removed out of a merit system job, and then his pay has been increased. His pay has increased in 2016 to $95,359.20. In other words, he made the same request as Agent Smith. Take me out of the merit system and let me get a raise. They honored it for him, and as a result, he winds up making at this point approximately $50,000 more than her. The other comparator that we have is Agent Murray. Agent Murray was hired in an unclassified position, but in 2014 says, hey, I would like to have merits, or I'm sorry, is hired in an unclassified position in 2011. His pay at that point in time is $83,390. Again, his duties and responsibilities are the same as Agent Smith's. In 2014, his pay is increased to $90,724.80 by the Attorney General. It was done on the recommendation of Matt Hart. When Matt Hart was asked, why did you recommend this increase? He could not think of a reason why the pay would be increased at that point. By 2019, Agent Murray is making $103,202 to Special Agent Smith's $47,757. Well over double for doing the same amount of work. Ultimately, this is the textbook Equal Pay Act Title VII pay discrimination case. And when we look at the reasons that are ultimately offered for the pay difference, the state's primary argument is pay differential. Counsel has made argument based on records showing people's different class or qualifications that experience may have played a factor. But when you look at the letters of recommendation from Attorney General Strange, identifying the reason for his pay recommendation is linked solely to prior pay. That type of market theory argument was rejected by this court repeatedly. The second issue we have though is the pre-selection for promotions of male applicants. My client, Agent Smith, applies to be a Senior Special Agent. There are two men who also apply, Lambert and Murray. When Murray applies, Matt Hart announces throughout the office, no one need apply, this is Murray's job. Matt Hart in his deposition even testified, yes, we were going to put Murray into this job so that he would have merit system protection and then once he obtained it, we would roll him back out. Despite Agent Smith being meeting the qualifications for the job and being in the merit system, this job was specifically taken out of the merit system and opened or it was left in the merit system but opened up so people outside, not previously qualified, could apply. In other words, the process was manipulated to get Murray into that position. What is telling is that after he vacates that position, it is not reposted. My client is not even given consideration for that job. This is a clear indication that the job was meant for him, he was pre-selected for it. When it comes to Agent Lambert getting the promotion to Senior Special Agent, we also have another problem. Again, here, we have Attorney General Strange being the decision maker. This time he says, I relied on the people who did the interviews, particularly the recommendation of Ms. Smith's supervisor at the time, Furman. When we ask him in his deposition, what did you base the recommendation on? It's based on two things. One is where they rank on the certificate of eligibles. The certificate of eligibles ranking is determined 100% by their prior performance evaluations. Agent Lambert only had one evaluation but the posting anticipates you having three and there being an average. Because he only had one and it was given to him a month early after he was encouraged to apply for this job, he winds up ranking higher than Agent Smith. However, her highest evaluation that's being averaged into this mirrors this. If only one of her evaluations was considered that one, then they would have ranked identically. But the other thing that is interesting is when we get into Furman's deposition and we go, well, why did you ultimately recommend Lambert over Smith? He can't give a clear answer. He says experience. But when I press him and I ask him, what about his experience likely to recommend him over Smith? He can't provide a clear answer. So just like we have with the pay situation, we ultimately here have an appointing authority making a decision who can't justify why it is and when we go to the next level down and ask the person who made that recommendation, they can't give a clear explanation. So the problems that we have in this case is we have a female investigator being treated dramatically differently than male employees as it relates to pay and opportunity. And when we ask the person who is ultimately responsible for making those decisions, the Attorney General of the state of Alabama, he can't give a clear answer. That is why summary judgment was improperly granted. The state has good arguments and those are arguments which should be submitted to a jury. The district court erred because it stepped outside of Rule 56 and instead of recognizing that the arguments for what they were arguments and not evidence, the district court resolved material facts in favor of the moving party as opposed to the non-moving party and in doing so deviated from Rule 56. For this reason, we urge this court to reverse the district court's order granting summary judgment on agent Smith's claims and remand it for trial. Thank you, counsel. And you've reserved three minutes for rebuttal. We'll hear from Ms. Wells. May I please the court? My name is Barbara Wells and along with Blake Brookshire, we represent former Attorney General Luther Strange and the Office of Attorney General in this case. I'd like to begin with some response to some of the specific arguments Ms. Leonard made in her very cogent explanation of her position. First, starting with the rationale for the merit system. The merit system was created as a creature of the statute in the Alabama Code. Also, found in the Alabama Code are some other provisions that are very important to the resolution of this case. Specifically, in addition to creating the classified service of the merit system, there are specifically exempted positions that are recognized in the Alabama Code that are not part of the merit system at all. Those are called the exempt service. And then there are a limited number of unclassified positions. And the thought behind the unclassified positions, which are all a creature of statute, is to give various officials throughout state government the flexibility needed to bring in very specific talent to make, because government hiring in the merit system is not nimble or flexible, when the enforcement priorities, for example, in the AG's office change, as they do pretty much every time we get a new Attorney General. They reconfigure the office. They create a new special enforcement priority. Under Troy King, it had to do with children and family and fraud crimes. Under Attorney General Strange, he campaigned, even before his election, on returning the Office of Attorney General to an enforcement agency that actually went after public corruption because the public corruption unit had been disbanded under Attorney General Troy King. It had previously existed under Attorney General Pryor, and prior to that, under... I'm sorry to interrupt. Sorry. But I think your point was that there is a reason why you can have unclassified positions. And I'm wondering if you want to specify what that reason is and where we would find that explanation. Certainly. You would find the explanation in the affidavit, for example, of Richard Allen, which is in the record. But I guess my question is, is there a legal place where we would find it, like a law or a regulation or legislative history or anything of that nature? Well, it doesn't really deal with legislative history, but there is testimony about the history of unclassified positions specific to the Office of Attorney General. In... Richard Allen has been in and out of the Office of Attorney General at various points throughout his career in the Chief Deputy Attorney General position under three different Attorney Generals. And so he has a very long view of the history of that and the history of how the statute in the Alabama Code changed and why. But there are provisions in the Alabama Code. At one point, all of the positions in the Office of Attorney General were statutorily made to be unclassified. That is not within the merit system for hiring and firing. That was under Attorney General Jimmy Evans. He wanted every one of the appointees in his office to be subject to his at-will powers and free of the... or outside of the... Okay. ...merits and protections. But let's talk about the issues in this case. Yes, ma'am. In this case, we do see that the comparators here are going back and forth between classified and unclassified, or merits and unclassified positions, so that they can... so that the net effect of it is that they can get the highest possible salary and also get the protections of the merit system. Correct. Right. And Ms. Smith is not getting either of those things. I mean, she's getting the merits system protection, but she's not getting any kind of raises. Her salary is less than half of some of these comparators. And... Can I? Yes, please. Okay. So, Ms. Smith was hired under Attorney General King in 2007 or 2008, I can't remember the specific date right now. However, it was right before there was a freeze on merit raises put into place. So, usually employees in the merit system in Alabama will get a one or two step raise, which is two and a half percent or five percent, depending on if it's one or two steps, every year at the time of their annual performance appraisal, assuming that they meet standards or above. Okay? The higher their performance appraisal, it might be five percent. If they're just like, then it might be two and a half percent. Let me ask if she... That didn't happen for her. Please let me answer the question you asked because I'm trying to get there. It didn't happen for her because the governor, Riley, froze merit raises from 2008 to 2014. That has nothing to do with our intention not to give her raises and the jobs that were done were very different. The expertise needed. All right. You can say whatever you want to say. We're going to have to decide the case and part of why I'm asking you questions is so it can help me to decide what the right answer is here. So, I appreciate that you want to respond. I'm trying to follow... I'm sorry for answering your question. I'm so sorry. No, it's all right. My question is, with respect to Baker, when was he hired? 2013. All right. Although there was an initial attempt to hire him by Murray and Hart in 2011 because Murray and Baker had both worked the Sigelman-Skruchy public corruption case, which was one of the biggest ones in the history of the state. All right. So, here is the question then. You've explained about the hiring for the pay freeze with respect to the promotions or the increases, the step increases. Was there at the same... And that was because there was a problem with there being enough money, right? Yes. Okay. But at the same time this is happening, a new position is hired at a rate that's almost twice as much as Ms. Smith. Is that right? Correct. Outside of the merit system. So, the freeze... But is there a separate pot of money for outside the merit system than inside the merit system? A separate pot of money. The agency still has to have it in their budget. The problem was the governor decreed that thou shalt not give merit raises to anyone in the classified service because the state on a whole, on balance, couldn't afford it on a whole and they wanted it to be a fair across the board in terms of all merit employees regardless of the specific agency had money in their budget or not, they could not... Nobody was getting merit increases if they were in the classified service. If the agency had money in their budget and a statutory unclassified position, which the Attorney General's Office did, they did have the ability to use the flexibility of the unclassified position to try to get the people that they needed that would not come without a higher salary than the merit system would have allowed. Okay, so here's my question. When Mr., well, when Ms. Smith asks for the raise and then asks to be put into an unclassified position so that she can get the raise, why isn't that what we should be comparing to the hiring of Mr. Baker at the $76,000 salary? We could, and the justification is what is throughout the record, which is we hired Baker and Murray, those two particularly, for the same reason that Matt Hart was hired into an unclassified position. They had specialized expertise, extensive specialized expertise in doing public corruption cases for the FBI. That talent and ability was not present in the AG's office current body of workforce. Attorney General, former Attorney General Strange, in his deposition testified, we were looking inside or outside specifically, we were looking for people that had the ability to do public corruption cases, which by their essence are very different than other types of crimes. And to do that, Richard Allen was tasked with finding the best people that had that skill set. Richard Allen found Matt Hart. Attorney General Strange testified in his deposition that he knew Matt Hart. All right, but let me ask you another question then. Why is your friend on the other side here not correct that there is a material issue of fact that a jury should be able to consider in light of the fact that when former Attorney General Strange was asked these questions, he did not know the reasons why these salaries were provided? First, I'd like to encourage the court to look at the deposition testimony of Attorney General Strange, not just the couple of lines that they cite. Because after he says, I don't remember the specifics, he then talks specifically about all he remembered when he interviewed Murray, what he remembered about Murray's experience and what was on his resume. So he doesn't remember nothing. There are times where he says, I don't remember. The fact is that in large state agencies like this, the very top executive, imagine a corporation, you wouldn't expect the very top CEO to know everything about every hiring promotion or pay decision. Well, that might be true, except that when you know that you're going to be deposed in a Title VII and Equal Pay Act case, you would expect the person to know the reasons why, and especially the Attorney General who understands the nature of the law, to know the reasons for decisions that he made involving the plaintiff and the comparators that the plaintiff has raised. And what's very specifically clear in his deposition are the following things. He delegated the authority of finding the people needed to stand up a public corruptions unit that had the right experience to then Chief Deputy Attorney General Allen, who was then Jim Murray, and Matt Hart and Jim Murray tried, starting right then, to hire Baker, who had also worked on the Sigelman case. Baker didn't come until 13, but they had been recruiting him all the way along because of his specialized expertise. Every time he was asked, he doesn't just say, I don't know. Strange says, I relied on the recommendations made by the Chief Deputy Attorney General and the Deputy of Administration, Charlotte Doucette. The reason that's important is Luther Strange did not come from a position within state government. He doesn't understand all the ins and outs of the merit system, unclassified positions. It's very complex in Alabama. The statutory web that creates state employment is very complex. And you need an expert. And across state government, you'll find that usually either the personnel manager or if it's the division chief, that's the person that supplies the how-to. Do we do it through merit? Do we do it through unclassified? How do we get to the result that we need? Which in this case was that both Murray and Baker said, we won't come and bring the expertise you need unless you can match the amount that our salary currently is. Neither of them had to retire. Both of them were a ways away from mandatory retirement age in the FBI. So we had to lure them here for their expertise. Fortunately, they were willing to give the state credit for the amount that they would be able to pull out of their retirement. So we only had to get the rest of the gap, right? Which is why it's 80 and not 130. Because they had 50 in retirement from the feds. And they said, if you put 80 on top of that, you'll be... And these aren't the specific numbers. I apologize because it depends on what... I know what the numbers are, it's okay. They're saying, we'll give you credit for our retirement benefits from the federal government. If you'll meet the difference to get to the salary where we are now, we'll bring our expertise there. And Strange makes it very clear that he knew that these people were being recommended because of their superior expertise in an area that he had tasked his both heart and Richard Allen in finding these people who could stand up this unit. Did I answer your question? I think the way that you would answer, yes. Okay. Well, I'm happy to provide anything else. The other thing I would like to say is, think about the analogy to a cat's paw case for a minute. There, you know, we don't... It's sort of the inverse of a cat's paw. It's a benign cat's paw, right? We don't have any evidence at all about a motive one way or the other from Strange. Because I didn't suborn perjury and he doesn't remember. So I'm unable to refresh his recollection. I went with his truth. And that's what you have to do as an advocate. That's what he remembered. And other people remember and other people testified about conversations they had with him. Richard Allen has it in his affidavit. Murray has it in his deposition. I think Charlotte Doucette has it in her testimony in her deposition. But Strange did not remember. And so, he's sort of a blank box. We shouldn't assume that he's a negative box. Let's look at the reasons of the people who made the recommendation. Which is just like what we do in a cat's paw when there's a bad motive and no independent investigation. We impute the bad motive. Why wouldn't we also borrow the good motive? Otherwise, it's not just there's a question, how do I prove this to the jury? Because Strange doesn't remember. Do you have any case law for, you just said, you know, on your inverse cat paw theory? We have looked for it and I can't find something directly on point. But there is sort of a hint of it in some of the cases that talk about the rationale. It's the logical same thing as what the analysis is in cat's paw cases. It's just not imputing the bad intent. So no, I didn't find it yet. Okay. Thank you. Thank you, Your Honors. We ask that you affirm the lower court. All right. Thank you, Counsel. And we'll hear again from Ms. Leonard. Your Honors, I think the exchange that you just witnessed highlights why this is a jury question and not a summary judgment case. That the plaintiff established a prima facie case that creates the presumption of discrimination, pay discrimination, promotional discrimination. Under the traditional framework, which is the next issue I want to address, the burden would then ultimately shift to the defendant to give us some reason or rationale for why they acted. And then the burden would come back to my side to say, that's a pretext. Here is evidence showing why you should reject that reason and this should go forward to a jury. This case stalls, though, after the plaintiff's prima facie case because Attorney General Strange was honest. He didn't remember. And when we get to the recommendations that the state says he relies on, if you look at the affidavit of Richard Allen, he never says, this is why I suggested that Murray should get a certain amount of money. His affidavit says, we had a big checkbook and I had some recommendations on Murray. But he never says specifically what he recommended about Murray or why. So there's no evidence as to what motivates us as it relates to Murray. When it comes to Baker, Matt Hart says, yeah, I ultimately recommended him, but Luther Strange is his own man and he makes his own decision. That's in Hart's deposition, docket entry 527 on docket page 81. And again, when we get back to Strange, he can't give us any explanation. The only thing that we have from Strange under his own hand is evidence that shows it's a market force argument that this court has already rejected, which is their prior pay. That's why this is a jury question. That's why these facts should be resolved by a jury and not by a court, which segues into exactly what we're talking about, which is the burdens of proof as it relates to discrimination cases. I do not envy this court nor the district court's roles in trying to weigh through the different standards that are out there in the direction that we've had. The history of this court has traced the different ways of ultimately, how do you establish discrimination? How do we present the evidence of that? And following Justice Gorsuch's opinion in Bostock, I think it is a call for this court to revisit it in the context of this case. Knowing that the Supreme Court post-Bostock has said, at least in the Title VII context, that we're going to be using a motivating factor analysis because of the language in the 1991 amendments and the fact that the causation standard is not a sole cause standard. This is a good case to look at that. But the evidence that this court has seen is that you have men doing the same work as women and the system being manipulated so that unlike the women, the men can have the high pay and the protection of the merit system. Women like Agent Smith, all they got was the protection, but they didn't get the money for the same work. The district court's opinion should be reversed and remanded and this case should be sent to trial. Thank you, counsel. The Court is adjourned.